FILED
2006 Apr-10  PM 02:09
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **TOMMY D. BARRON, et al.,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 2:06-cv-0331-KOB** |
| ) | |
| **WALKER COUNTY, ALABAMA,** ) | |
| **et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM BRIEF IN SUPPORT OF DEFENDANTS WALKER COUNTY SHERIFF JOHN MARK TIREY AND WALKER COUNTY DEPUTY SHERIFF DERANE INGLE'S MOTION TO DISMISS

COME NOW Walker County Sheriff John Mark Tirey[1] and Walker County Deputy Sheriff Derane Ingle, defendants in the above-styled cause, and submit this Memorandum Brief in support of their Motion to Dismiss.

### INTRODUCTION

The Complaint alleges four state law claims against Sheriff Tirey: (1) negligence; (2) inadequate supervision; (3) negligent hiring; and (4) outrage. The Plaintiffs sue Deputy Ingle under both state and federal law. Plaintiff Tommy Barron brings a federal 42 U.S.C. § 1983 claim against Deputy Ingle for the alleged use of excessive force during his arrest. The Plaintiffs also bring six state

---

[1] The Plaintiffs have misidentified this Defendant Tiree in the body of their Complaint. He is named correctly, however, in the style of the Complaint.

law claims against Deputy Ingle:  (1) invasion of privacy; (2) assault and battery; (3) false arrest and imprisonment; (4) malicious prosecution; (5) negligence; and (6) outrage.

The Plaintiffs' claims all derive from the arrest of Plaintiff Tommy Barron on February 16, 2004, by Walker County Deputy Sheriff Derane Ingle for disorderly conduct and resisting arrest.  (Doc. 1 at ¶¶ 15, 19.)  As alleged, the Plaintiff was subsequently convicted of the resisting arrest charge but acquitted of disorderly conduct.  Id. at ¶ 20.  As set forth below, both Sheriff Tirey and Deputy Ingle are entitled to a dismissal of the Plaintiffs' claims as a matter of law.

## ARGUMENT

A motion to dismiss will be granted when the movant demonstrates "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  See Harper v. Blockbuster Entertainment Corp., 139 F.3d 1385, 1387 (11th Cir. 1998) (affirming district court's grant of 12(b)(6) dismissal) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  "Pleadings must be something more than an ingenious academic exercise in the conceivable." Marsh v. Butler County, 268 F.3d 1014, 1037 (11th Cir. 2001) (en banc).  In addition, unsupported conclusions of law or of mixed law and fact are not sufficient to withstand dismissal under Rule 12(b)(6).  Marsh, 268 F.3d at 1036 n.16; see also South Florida Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996) (noting "as a general rule, conclusory allegations and unwarranted

deductions of fact are not admitted as true in a motion to dismiss"). Even taking all of the Plaintiffs' allegations as true, their claims against Sheriff Tirey and Deputy Ingle are due to be dismissed based on the legal grounds set out below.

## I.    THE PLAINTIFFS' STATE LAW CLAIMS ARE DUE TO BE DISMISSED.

Under both Alabama and federal law, the Plaintiffs' state law claims against these Defendants are due to be dismissed for three reasons. First, Alabama law provides Sheriff Tirey and Deputy Ingle with absolute immunity to the Plaintiffs' state law claims. Second, the Eleventh Amendment to the United States Constitution deprives this Court of jurisdiction to hear the Plaintiffs' state law claims. Third, *res judicata* bars Plaintiff Tommy Barron's state law claims against Sheriff Tirey and Deputy Ingle.

### A.    Sheriff Tirey and Deputy Ingle are Entitled to Sovereign Immunity.

Under Alabama law, each county sheriff is an executive officer of the State. See Article V, § 112 of the Alabama Constitution. Sheriff's deputies are legally extensions of their sheriff and are likewise considered officers of the State of Alabama. See Hereford v. Jefferson County, 586 So. 2d 209, 210 (Ala. 1991); Carr v. City of Florence, 916 F.2d 1521, 1525-26 (11th Cir. 1990) (holding that, under Alabama law, a deputy is legally an extension of the sheriff); see also McMillian v. Monroe County, 520 U.S. at 793 (holding that an Alabama sheriff represents the State of Alabama when executing law enforcement duties).

As executive branch, constitutional officers of the State, Sheriff Tirey and Deputy Ingle are immune from suit under Article I, § 14 of the Alabama Constitution of 1901. This section immunizes them from *all* state law claims, including constitutional claims, even though sued in their individual capacity. Tinney v. Shores, 77 F.3d 378, 383 (11th Cir. 1986) (holding sheriff and deputy sheriff were entitled to state sovereign immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1431 (11th Cir. 1998) (holding sheriff and jailers were entitled to sovereign immunity); Parker v. Amerson, 519 So. 2d 442, 445 (1987) (holding the Sheriff immune from suit although sued "individually, and as Sheriff"); Ex parte Purvis, 689 So. 2d 794 (Ala. 1996) (holding sheriff and deputy were entitled to sovereign immunity in both their individual and official capacities); Ex parte Haralson, 871 So. 2d 802, 807 (Ala. 2003) (holding deputy sheriff entitled to sovereign immunity); Ex parte McWhorter, 880 So. 2d 1116, 1117 (Ala. 2003) (holding deputy sheriff entitled to sovereign immunity).

There are, however, limited exceptions to this immunity. An Alabama sheriff is immune from suit:

> except for actions brought (1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment Act if he is a necessary party for the construction of the statute.

<u>Parker</u>, 519 So. 2d at 443.   Accordingly, even in situations where sheriffs and deputies are sued for negligence or bad faith, the only exceptions to sovereign immunity allowed by the Alabama Supreme Court under Art. 1, § 14 of the Alabama Constitution of 1901, are to *enjoin* the conduct of the state official. <u>Alexander v. Hatfield</u>, 652 So. 2d 1142, 1143 (Ala. 1994).  With only these narrow exceptions, Alabama sheriffs and their deputies are immune from suit.  <u>Ex parte Purvis</u>, 689 So. 2d 794, 796 (Ala. 1996) (holding sheriff and deputy were entitled to sovereign immunity in both their individual and official capacities).   <u>Ex parte Blankenship</u>, 893 So.2d 303, 305 (Ala. 2004).

Less than five months ago, the Alabama Supreme Court again affirmed that sheriffs and deputies enjoy absolute immunity to state law money damages claims.  <u>Ex parte Davis</u>, 2005 WL 3082778 (Ala. November 18, 2005).  In <u>Davis</u>, the Conecuh County Circuit Court refused to grant a Conecuh County deputy's motion to dismiss state law money damages claims.  2005 WL 3082778 at * 2. The plaintiff's claims against the deputy included false imprisonment, assault and battery, outrage, wantonness, negligence, trespass, and conversion.  <u>Id.</u> at 1. Granting the deputy's petition for a writ of mandamus and instructing the circuit court to grant the motion to dismiss, the Alabama Supreme Court held that "an action against a sheriff – or a deputy sheriff – for damages arising out of the performance of his duties is essentially a suit against the state" and thereby

barred under Article I, § 14 of the Alabama Constitution of 1901.  Id. at *3 (internal quotations and citations omitted).

Here, Deputy Ingle is specifically alleged to have acted "within the scope of his employment" as a "sworn deputy sheriff . . . [of] the Walker County Sheriff's Department."  (Doc. 1 at ¶ 24.)  The same actions are the basis of the Plaintiffs' vicarious liability claims against Sheriff Tirey.  Furthermore, the Plaintiffs' claims aimed at Sheriff Tirey's own conduct – inadequate supervision, hiring, and negligence – could only be based on actions/omissions within the scope of his authority.  It is only as the Sheriff of Walker County that John Mark Tirey has the authority to hire, train, and supervise deputies.

Consequently, all of the Plaintiffs' state law claims are due to be dismissed.

**B.    The Eleventh Amendment to the United States Constitution also bars Plaintiffs' state law claims.**

The Plaintiffs' state law claims are also due to be stricken for lack of subject matter jurisdiction.  As discussed above, Sheriff Tirey and Deputy Ingle are executive branch constitutional officers of the State of Alabama.  As such, any claims brought against them are claims against the State.  The Eleventh Amendment bars any claims, including state law claims, brought against a state or its officials in the absence of state consent.  See Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 99-100 (1984) (holding the Eleventh Amendment

barred state law claims brought in district court under pendent jurisdiction). The Plaintiffs have not alleged a waiver of immunity nor has the State consented to this suit. Consequently, this Court lacks jurisdiction over the Plaintiffs' state law claims and they are due to be dismissed.

### C.    Tommy Barron's Claims are Barred by *Res Judicata* and Collateral Estoppel.

As set out more fully in the next section, Tommy Barron's state law claims are barred because they have been previously litigated before the Walker County Civil Service Board (hereinafter "Board"). Specifically, any claim raised by Mr. Barron before the Board or any claim that he could have raised are barred. Additionally, Mr. Barron is precluded from relitigating issues decided by the Board. The issues decided as set forth below, make it impossible for Mr. Barron to recover on his state law claims.

## II.    THE PLAINTIFFS' INDIVIDUAL CAPACITY CLAIMS AGAINST DEPUTY INGLE ARE DUE TO BE DISMISSED AS A MATTER OF LAW BECAUSE OF ADMINISTRATIVE PRECLUSION AND QUALIFIED IMMUNITY.

As a matter of clearly established law, the Plaintiffs' excessive force claims against Deputy Ingle are due to be dismissed for two reasons. First, because an administrative body has already found that Deputy Ingle did not violate Plaintiff Tommy Barron's rights, his claim is barred by *res judicata* and collateral estoppel. Second, Deputy Ingle is entitled to qualified immunity.

**A.    An Administrative Body Has Already Determined that Deputy Ingle did not Violate Tommy Barron's Rights.**

The United States Supreme Court has made it abundantly clear that the decisions from such proceedings are to be afforded preclusive effect.  University of Tennessee v. Elliott, 478 U.S. 788, 799 (1986) (holding that where a state agency acts in a judicial capacity and resolves disputes properly before it which the parties have had an adequate opportunity to litigate, "federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the state courts").  The Eleventh Circuit has devised a two-part test for determining whether the administrative agency's decision is to be given preclusive effect:  (1) the state courts would be bound by the decision; and (2) the proceedings comported with the requirements of due process.  Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999).

*Res judicata* bars subsequent claims where (1) a prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties were identical in both suits; and (4) the prior and present causes of action are the same.  Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1187 (11th. 2003) (citations omitted).  *Res judicata* bars not only the claims raised in the previous litigation but also any claims that **could** have been raised in the earlier case.  Trustmark Ins. Co. v. ESLU, Inc., 299 F.3d 1265, 1271 (11th Cir. 2002).  Collateral estoppel bars relitigation of an issue previously decided if the party

against whom the prior decision is asserted had "a 'full and fair opportunity' to litigate that issue in an earlier case." Allen v. McCurry, 449 U.S. 90, 94-95 (1980). The elements of collateral estoppel are: (1) the issue must be identical in the pending case to that decided in the prior proceeding; (2) the issue must necessarily have been decided in the prior proceeding; (3) the party to be estopped must have been a party or have been adequately represented by a party in the first proceeding; and (4) the precluded issue must actually have been litigated in the first proceeding. In re Raiford, 695 F.2d 521, 523 (11th Cir. 1983).

Here, Plaintiff Tommy Barron presented a complaint to the Board regarding the same events that underlie his claims against Deputy Ingle before this Court. (Exhibit A, Findings of the Civil Service Board of Walker County, Alabama From Hearing of March 7, 2005, "Findings".) As set out more fully below, the Board as established under Alabama law functions as an administrative court and it had competent jurisdiction to here Mr. Barron's complaint. The issues and claims were that were raised or could have been raised before the Board were the same as those before this Court and were necessarily decided by the Board.

Consequently, because the Maniccia test is met, Mr. Barron's claims are precluded. The decision and the procedures followed to reach it comply with the Maniccia test. Therefore, the Board's decision that Deputy Ingle did not violate the Tommy Barron's rights or use excessive force, precludes Mr. Barron's identical claim before this Court.

9

1.    **The decision of the Walker County Civil Service Board satisfies the Elliott/Maniccia test.**

The Board is a creation of the Alabama legislature and is separate from Walker County.  (Exhibit B, 1994 Ala. Acts 200.)   The Board's membership is appointed by the Governor of the State of Alabama.  Id. at § 5.  The Walker County Commission has no control over the Board or input into its membership.  Id.

Citizens of Walker County may file charges against anyone subject to the Board's authority by filing a sworn complaint with the Board.  Id. at ¶ 14(a).  The Board has the authority to order and hold a hearing on such charges.  Id.  The Board has the power to administer oaths, take depositions, certify official acts, issue subpoenas, compel the attendance of witnesses and the production of documents.  Ala. Acts 200 § 14(a).  The hearings are open to the public and recorded.[2]  Persons involved are entitled to notice.  Id.  The Board is required to reduce its final decisions to writing.  Id.

In the event a party is dissatisfied with a decision of the Board, a right of appeal exists to the Circuit Court of Walker County.  Ala. Acts 200 § 14(b).  The appeal must be made within thirty days of the decision.  Id.  Any review, however, is limited to the record produced by the Board.  The Board's findings of fact are "final and conclusive" and may not be disturbed by the Circuit Court.  Id.

---

[2] In this particular case, a court report was present who took down a verbatim transcript.  The transcript has been ordered but was not available at the time the instant brief was due.  Defendants hope the transcript will be available in time to submit it with their reply brief.

The appeal process makes it abundantly clear that Alabama's courts are bound by the decisions of the Board.  Only one court has the power to review the Board's decisions, but that review is limited solely to questions of law.  Accordingly, the element that the Board's decisions be binding on Alabama's state courts is met. Maniccia, 171 F.3d at 1368.

The second element is also met.  Notice, an opportunity to be heard, written findings, procedures to obtain evidence, and a right of appeal are all part of the Board's procedures.  As specifically relates to this case, Mr. Barron was present at all times and represented by counsel.  (Findings at p. 1.)  Four hearings were conducted over the space of eight months.  Id.   Both Plaintiffs testified and were able to call other witnesses and present evidence.[3]   Accordingly, as the Board's procedures comport with due process, the second element of Maniccia is met.  171 F.3d at 1368.

> **2.    The decision of the Walker County Civil Service Board precludes Tommy Barron from pursuing his excessive force claim against Deputy Ingle.**

In accordance with Elliott and Maniccia, the following finding of facts by the Board should be adopted by this Court.  The Board found that Deputy Ingle knew Mr. Barron for ten to twelve years prior to February 16, 2004 and had arrested him on previous occasions.  (Findings at p. 2.)  Mr. Barron had a history of mental illness including bipolar disorder and schizophrenia.  Id. at p. 3.

---

[3] While these facts are not reflected in the decision, they are abundantly clear from the record that was prepared.  As noted previously, the transcript will be submitted to the Court as soon as it is received by the Defendants.

Furthermore, Mr. Barron had a cast or bandage on his hand prior to his arrest on February 16, 2004, and had suffered an injury the day before.  Id.  Earlier, Mr. Barron had injured his hand by slamming it through a plate glass window.  Id.

On February 16, 2004, Mr. Barron made a domestic disturbance 911 call that resulted in Deputy Ingle being dispatched to the Plaintiffs' home.[4]  When Deputy Ingle arrived, he was met by Mrs. Barron who said he was not needed.  Because Deputy Ingle had been trained to make contact with the specific person who made a domestic disturbance call, he insisted on seeing Mr. Barron.  (Findings at p. 2.)

When Deputy Ingle finally saw Mr. Barron, Barron was combative and intoxicated.  (Findings at p. 2.)  In fact, he had taken Darvocet 500 and drank "several" beers.  Id. at p. 3.  Deputy Ingle placed Mr. Barron under arrest and attempted to place handcuffs on him.  Id. at p. 2.  Mr. Barron resisted being handcuffed and also being placed in Deputy Ingle's patrol car.  Id.  Mr. Barron was subsequently transported by Deputy Ingle to the Walker County Jail where he remained in the "drunk tank" until he bonded out the next day.  Id.

From this evidence, the Board specifically found that "Derane Ingle acted properly under the circumstances and did not violate the rights of Mr. Barron and did not use excessive force in perfecting the arrest of Mr. Barron.  (Findings at p. 3.)  These findings are entitled to be given preclusive effect.  Elliott, 478 U.S. at

---

[4] A recording was made of Mr. Barron's call and received into evidence during the hearings before the Board.  A copy of the recording will be provided with the transcript when it is made available.

799; <u>Maniccia</u>, 171 F.3d at 1368.   Furthermore, Mr. Barron's excessive force claim, and all of his other claims against Deputy Ingle and Sheriff Tirey are precluded here by operation of *res judicata*.   <u>Trustmark</u>, 299 F.3d at 1271. Accordingly, Deputy Ingle is entitled to a dismissal of Mr. Barron's excessive force claim.

### B.    Deputy Ingle is Entitled to Qualified Immunity.

Once a defendant has asserted the defense of qualified immunity and shown that he was acting within his discretionary authority, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation.   <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001).  This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  <u>Id.</u>  (citing <u>Siegert v. Gilley</u>, 500 U.S. 226, 232 (1991)).   The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the Plaintiff's constitutional rights?   <u>Willingham v. Loughnan</u>, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred.   <u>See</u> <u>Rodgers v. Horsley</u>, 39 F.3d 308, 311 (11th Cir. 1994).   A constitutional right is

clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987); Lancaster, 116 F.3d at 1424. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Board of Education, 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

Deputy Ingle is entitled to qualified immunity because he was acting within his discretionary authority and did not violate either of the Plaintiffs' federally protected rights. Even if the Complaint could be construed as containing a constitutional violation, no clearly established law provided Deputy Ingle with the requisite fair warning that his conduct was illegal.

### 1.    Deputy Ingle acted within his discretionary authority.

The Eleventh Circuit has stated that discretionary authority is a low hurdle to clear. Jordan v. Doe, 38 F.3d 1559, 1565 (11th Cir. 1994). A government official may show that he acted within the scope of his discretionary authority by showing that (1) the actions taken were pursuant to the performance of his duties; and (2) said actions were within the scope of his authority. Rich v. Dollar, 841 F.2d 1558, 1564 (11th Cir. 1988).

In the instant case, the Plaintiffs have specifically pled that Deputy Ingle was acting within the scope of his employment and exercising his authority under state

14

law.  (Doc. 1 at ¶¶ 24, 28.)  The Complaint indicates that Deputy Ingle was dispatched to the Plaintiffs' home after they argued and Mr. Barron called 911. Clearly, answering domestic disturbance calls is within the discretionary authority of a deputy sheriff.

## 2.    Deputy Ingle did not Use Excessive Force.

As Deputy Ingle was acting within his discretionary authority, the burden shifts to the Plaintiffs to prove he violated their federally protected rights.  Saucier, 533 U.S. at 201.  Here, the Plaintiffs have claimed that Deputy Ingle violated their right to be free from excessive force.  (Doc. 1 at Count Two.)  The test for determining whether an officer has applied excessive force in the course of seizing a person is the "objective reasonableness" test.  Graham v. Connor, 490 U.S. 386, 395 (1989).  The actions of the officer must be reasonable in light of the facts and circumstances confronting the officer, without regard to his underlying intent or motivation.  Id. at 397.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  Id. at 396.  "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation."  Id. at 396-97.  Under Graham, a court reviewing a claim of excessive force considers factors

such as the crime the officer is investigating and the threat to the safety of the officer or others.  490 U.S. at 396.

As noted above, Plaintiff Tommy Barron is precluded from claiming that Deputy Ingle violated his rights.  Mrs. Barron, on the other hand, never made a claim against Deputy Ingle until the filing of the instant lawsuit.  Deputy Ingle, however, did not violate the Plaintiffs' rights.

### a. Deputy Ingle did not use excessive force on Tommy Barron.

In addition to precluding his claims, the administrative decision entered by the Civil Service Board also has collateral estoppel effect with respect to the issues litigated in that decision.  Mr. Barron is estopped from relitigating issues decided in the administrative proceeding.  Elliot, 478 U.S. at 797.  Consequently, the facts from which this Court can make the Graham analysis are not limited to the self-serving averments in the Complaint.

Deputy Ingle was investigating a domestic disturbance call.  He encountered a combative and intoxicated Tommy Barron who resisted his efforts to place him under arrest.  Mr. Barron was clearly a threat to himself, Mrs. Barron, and Deputy Ingle.  The force used in effectuating his arrest – as found by the Board – was appropriate under the circumstances and cannot rise to the level of excessive force under Graham.

16

It should also be noted that Tommy Barron admits he was convicted of resisting arrest.  (Doc. 1. at ¶ 36.)  His conviction acts as a bar to any excessive force claim he makes for the reasonable force used in effectuating his arrest.  Heck v. Humphrey, 512 U.S. 477, 487 (1994).  Under the United States Supreme Court's holding in Heck, this Court cannot render a decision that casts doubt on the validity of the state court proceedings.  In Heck, the Supreme Court held that where a § 1983 action for money damages is based upon the same operative facts underlying a state court criminal conviction, and a determination in the plaintiff's favor necessarily invalidates the underlying criminal convictions, the § 1983 claim is barred.  512 U.S. at 487.   The only way the plaintiff may overcome this bar is to show "that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  Id.  Any claim Tommy Barron makes based upon the reasonable force used to effectuate his arrest is barred by his subsequent resisting arrest conviction and Heck.

**b.    Deputy Ingle did not use excessive force on Patsy Barron.**

Count Two of the Plaintiffs' Complaint also appears to allege an excessive force claim against Deputy Ingle on behalf of Patsy Barron.  (Doc. 1 at ¶ 28, alleging that Deputy Ingle "sprayed Freeze Plus on the Plaintiffs in their home,

[and] assaulted and verbally abused Plaintiffs in their home . . .")  However, the factual allegations of the Complaint do not support these conclusory allegations. According to the "Statement of Facts", incorporated by reference into Count Two, Deputy Ingle never sprayed Mrs. Barron or even touched her.

> When Barron came into the living room and saw Ingle, Barron stated, "Oh no, my worst nightmare".  When Barron said that, Mrs. Barron moved in between Ingle and Barron to protect her husband from Ingle. Ingle then **reached around Mrs. Barron and sprayed Freeze Plus into Barron's face** immediately blinding and disabling him.  Barron fell to the floor.  **Ingle then came around Mrs. Barron and placed handcuffs on Barron on his backside**.

(Doc. 1 at ¶ 15, emphasis added; <u>see also</u> ¶¶ 16-19.)  The Complaint, therefore, fails to allege that Deputy Ingle used excessive – or any – force against Patsy Barron.

However, even if Deputy Ingle had used force on Mrs. Barron, such force would have been justified under the circumstances.  Mrs. Barron is alleged to have gotten between her husband and Deputy Ingle, thereby interfering with Deputy Ingle's attempt to arrest Tommy Barron.   At the very least, Deputy Ingle was authorized to stop her efforts to interfere with the arrest of her husband.  At the most, she could have been charged with resisting arrest.  <u>See</u> ALA. CODE § 13A-10-41 ("A person commits the crime of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from affecting a lawful arrest of himself or of another person").  Accordingly, Patsy Barron's excessive force claim is due to be dismissed.

### 3. <u>No clearly established law provided Deputy Ingle with fair warning.</u>

The Plaintiffs must show that clearly established law provided Deputy Ingle with fair warning that his conduct was unlawful by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law. <u>Storck v. City of Coral Springs</u>, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted). The Eleventh Circuit has identified the latter method as an "obvious clarity" case. <u>Vinyard v. Wilson</u>, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted). In order to show that the conduct of the Defendant was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent." <u>Willingham</u>, 321 F.3d at 1301. "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit." <u>Storck</u>, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

After a diligent search of the relevant case law, counsel for the Defendants has been unable to find a case involving materially similar facts that held conduct similar to that engaged in by Deputy Ingle – as found by the Board – to be unlawful. Consequently, the Plaintiffs have the burden of either identifying such a case or

proving that the conduct of Deputy Ingle was obviously illegal.  If they fail to do so, their § 1983 claims are due to be dismissed.  <u>Willingham</u>, 321 F.3d at 1301.

## III.    THE PLAINTIFFS' FEDERAL OFFICIAL CAPACITY CLAIMS AGAINST DEPUTY INGLE ARE DUE TO BE DISMISSED.

Any claims against Deputy Ingle in his official capacity should be dismissed due to a lack of subject matter jurisdiction.  Such claims are first barred under the Eleventh Amendment to the United States Constitution.  <u>Parker v. Williams</u>, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); <u>Free v. Granger</u>, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); <u>Carr v. City of Florence</u>, 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); <u>Lancaster v. Monroe County</u>, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs).[5]

Furthermore, in his official capacity Deputy Ingle is not a "person" for purposes of 42 U.S.C. § 1983.  <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989).  Any claims against Deputy Ingle in his official capacity should therefore be dismissed because he is not a "person" under § 1983 and therefore

---

[5] The Complaint does not appear to contain any federal claims against Sheriff Tirey in either his individual or official capacity.  To the extent an official capacity claim could be deemed to be contained in the Complaint against him, Sheriff Tirey adopts the argument in this section as mandating the dismissal of such claims against him as well.

claims against him in that capacity fail to state a claim upon which relief can be granted.  Id.; Carr, 916 F.2d at 1525 n.3.

## IV.  THE PLAINTIFFS' COMPLAINT FAILS TO STATE A COGNIZABLE OUTRAGE CLAIM UNDER ALABAMA LAW.

The facts alleged in the Plaintiffs' Complaint are insufficient as a matter of law to state a claim of outrage.  Under Alabama law, a plaintiff claiming outrage must allege and prove three elements: (1) intentional or reckless conduct on the part of the defendant; (2) extreme and outrageous conduct; and (3) emotional distress that is so severe that no "reasonable person could be expected to endure it."  Ex parte Crawford & Co., 693 So. 2d 458, 460 (Ala. 1997).  The Plaintiffs' burden under this standard is so high that the Alabama Supreme Court has only recognized three categories of misconduct sufficient to justify the tort of outrage: (1) mishandling of corpses; (2) "barbaric" practices employed by insurance agents to obtain settlement; and (3) "egregious sexual harassment."  Id. at 460 n.1 (citations omitted).

On its face, the Plaintiffs' Complaint fails to conform both to the definition of the tort and to the categories specifically allowed by the Alabama Supreme Court.  Accordingly, Sheriff Tirey and Deputy Ingle are entitled to have the Plaintiffs' outrage claim (Count Ten) dismissed.

## CONCLUSION

Based upon the foregoing, Defendants Sheriff John Mark Tirey and Derane Ingle request that this Court grant their Motion to Dismiss and to award them costs and attorneys' fees in defending this action.

Respectfully submitted this the 10th day of April, 2006.

> **s/ Gary L. Willford, Jr.**
> DARYL L. MASTERS Bar No. MAS018
> GARY L. WILLFORD, JR. Bar No. WIL198
> Attorneys for Defendants
> WEBB & ELEY, P.C.
> 7475 Halcyon Pointe Drive (36117)
> Post Office Box 240909
> Montgomery, Alabama  36116
> Telephone:  (334) 262-1850
> Fax:  (334) 262-1889
> E-mail:  gwillford@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 10th day of April, 2006, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide notice to the following CM/ECF participants:

> Anthony J Piazza, Esquire
> Attorney at Law
> P. O. Box 550217
> Birmingham, AL 35255-0217

> **s/Gary L. Willford, Jr.**
> OF COUNSEL