IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TOMMY D. BARRON, et al., ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | Civil Action No. 2:06-cv-0331-KOB |
| ) | |
| WALKER COUNTY, ALABAMA, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM BRIEF IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANT WALKER COUNTY DEPUTY SHERRIFF DERANE INGLE'S MOTION FOR SUMMARY JUDGMENT**

COME NOW the Plaintiffs, Tommy D. Barron (now Taz D. Burch) and Patsy Barron and submit this Memorandum Brief in response to Defendant's Motion for Summary Judgment.

**STATEMENT OF FACTS**

The transcripts from the Walker County Civil Service Board hearings reflect differing testimony between the Plaintiffs and the Defendant, Derane Ingle regarding whether or not Tommy Barron was combative or resisted arrest. Defendant Ingle's own testimony was that Tommy Barron had never been violent or combative during his previous arrest history. The evidentiary record from the civil service board hearings also indicate that there was no interrogation or investigation by Defendant Ingle prior to placing Barron under arrest. There were differences in testimony between the Plaintiffs and Defendant Ingle as to the location and placement of handcuffs upon Barron's arrest, and also as to the use of "Freeze Plus" after the handcuffs were placed upon him. There was no dispute in the testimony that Defendant Ingle took the handcuffed Barron out of his home, and into the freezing cold weather when Barron had

nothing on but his undershorts and no tee shirt. There is no dispute in the testimony that Defendant Ingle insisted on talking to Barron, presumably to investigate and make inquiries as to the circumstances surrounding the making of the 911 call. Yet the testimony reveals he made no attempt to investigate the 911 call at anytime before, during and after the arrest of Plaintiff Barron. The transcripts are replete with numerous other issues of fact.

## STANDARD OF REVIEW

To be granted summary judgment, the moving party must show either that there is no genuine issue of material fact from the pleadings and filings and the moving party is entitled to a judgment as a matter of law or that there is an absence of evidence for the moving party's case. Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Summary judgment should be entered when the moving party has sustained its burden of showing the absence of a genuine issue of material fact when all the evidence is viewed in the light most favorable to the non-moving party. See Sweat v. Miller Brewing Co., 708 F.2d 655, 656 (11th Cir. 1983). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, 477 U.S. 242, 252 (1986). It is, therefore, under this standard that this court must determine whether the plaintiffs can meet their burden with sufficient evidence as to each material element of their claim.

## ARGUMENT

The Walker County Civil Service Board has the authority to hear citizen complaints against persons subject to the Board's limited jurisdiction, and the Board may render written findings of facts and law. (Ala. Acts 200 at 14(a)). A right of appeal exists to the Walker County Circuit Court. Id. In the case at bar, the plaintiffs opted to file their federal civil rights claims in

this action in federal court rather than pursuing the case in the state circuit court. As such, the plaintiffs' claims were never reviewed by a competent court for errors of law or for constitutional infirmity.

I. **Defendant Ingle is not entitled to use claim preclusion as a defense to the Plaintiffs' §1983 claims in federal court.**

The basic rule of claim preclusion is that "when a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are thereafter bound 'not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" Gjellum v. City of Birmingham, 829 F.2d 1056, 1059-60 (11th Cir. 1987) (quoting Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 578-79 (1974) (quoting Cromwell v. County of Sac, 94 U.S. (4 Otto) 351, 352 (1877))).

The Eleventh Circuit strongly disfavors application of claim preclusion to federal section 1983 actions where the litigants first submitted their disputes to state administrative agencies. In Gjellum, the court noted as follows:

> Section 1983 was thus intended to provide a *federal* forum for the vindication of federal rights. Allowing a state to dictate that an unreviewed decision of a state agency will foreclose litigation of a Section 1983 claim even if the issues were not presented to or decided by the agency would therefore be directly contrary to Congress's intent in enacting Section 1983.

Id. at 1065.

After an exhaustive analysis of claim preclusion as applied to the Section 1983 cause of action, the Eleventh Circuit succinctly stated its holding: "We hold therefore that unreviewed state agency decisions will not receive claim preclusive effect in a section 1983 action regardless of whether the state from which the judgment arose would bar the section 1983 claim." Gjellum, 829

F.2d at 1070 (emphasis added).

The case at bar was not reviewed by the Walker County Circuit Court. Instead, the instant action was immediately filed in this court. Because the Eleventh Circuit does not recognize claim preclusion for unreviewed state agency decisions, Defendant Ingle's assertion of claim preclusion is misplaced. Summary judgment on this point is therefore improper, and Defendant Ingle's argument for claim preclusion or res judicata should be denied.

## II. Defendant Ingle is not entitled to use issue preclusion as a defense to the Plaintiffs' claims of unconstitutional use of excessive force.

The Walker County Civil Service Board's factual findings do not operate as a bar to the instant litigation because Alabama courts would not apply issue preclusion, i.e., collateral estoppel, under the same circumstances. Defendant Ingle's brief accompanying his motion for summary judgment argued both issue preclusion and claim preclusion as defenses. Though the Eleventh Circuit foreclosed the use of claim preclusion for unreviewed state administrative findings, it left open the option of issue preclusion for factual findings by state administrative agencies. Gjellum, 829 F.2d at 1070. Nonetheless, issue preclusion is inapplicable to the facts of this case, as set forth *infra*.

### A. A federal court must apply the forum state's law on issue preclusion.

As a general rule, findings of administrative agencies may be afforded preclusive effect in federal court. University of Tennessee v. Elliott, 478 U.S. 788, 799 (1986). However, the Court expressly limited the preclusive effect of such administrative findings, holding that federal courts need only "give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." Id. The Eleventh Circuit has acknowledged that "even in a suit under section 1983, a federal court must give the same 'full faith and credit' to the records and judicial

proceedings of any state court that they would receive in the state from which they arise."
Gjellum, 829 F.2d 1056, 1060 (11th Cir. 1987). The determination of whether the Walker
County Civil Service Board's findings are to be afforded preclusive effect therefore turns on the
analysis of whether Alabama courts would apply issue preclusion under the same circumstances.

Alabama case law provides for a five-part analysis to determine the applicability of
collateral estoppel, or issue preclusion, following an administrative proceeding. See Ex parte
Shelby Medical Center, Inc., 564 So.2d 63, 68 (Ala. 1990). "The doctrine of collateral estoppel
applies when: (1) there is identity of the parties or their privies; (2) there is identity of issues; (3)
the parties had an adequate opportunity to litigate the issues in the administrative proceeding; (4)
the issues to be estopped were actually litigated and determined in the administrative proceeding;
and (5) the findings on the issues to be estopped were necessary to the administrative decision.'"
Id. (quoting Pantex Towing Corp. v. Glidewell, 763 F.2d 1241, 1245 (11th Cir. 1985)).

### B. Alabama would not allow issue preclusion from an administrative agency's unreviewed determination of questions involving constitutional concern.

The Supreme Court of Alabama disfavors issue preclusion where unreviewed
administrative findings involve determinations of constitutional rights. In Ex parte Smith, the
court observed that "[i]t is well established that a federal court will not preclude litigation of
constitutional issues when those issues have been raised in an unreviewed decision of a state
administrative agency." Ex parte Smith, 683 So.2d 432, 434 (Ala. 1996). In a lengthy analysis of
both United States Supreme Court and Eleventh Circuit precedent, the Alabama court distilled the
holdings into a single rule of law: "[T]hese cases stand for the proposition that the federal
common law doctrine of collateral estoppel will not be applied in federal forums when the
decisions on the constitutional issues to be precluded have not been judicially reviewed." Id.

(citing Carlisle v. Phenix City Bd. of Ed., 849 F.2d 1376 (11th Cir. 1988)).

In Smith, the plaintiff filed a section 1983 claim in Alabama state court, arguing that his termination by a state technical college violated his constitutional rights to free speech and due process. Id. at 433. Smith's constitutional claims had been rejected by the administrative panel assigned to review his case. Id. He chose to file a section 1983 claim in state court rather than filing for review of the administrative panel's decision. Id. The Supreme Court of Alabama determined that Smith's claim was not "actually litigated and determined in the administrative proceeding," as required by Shelby Medical Center, because the administrative review panel partially composed of lay members "could not adequately determine the constitutional issues presented to it." Id. at 435 (relying on Edmundson v. Borough of Kennett Square, 4 F.3d 186 (3rd Cir. 1993) (holding that an administrative panel of lay citizens was not competent to adjudicate constitutional questions such that a federal court would be precluded from reviewing the constitutional questions).

In Smith, the administrative panel was called upon to decide whether Smith's speech was "constitutionally protected." Id. at 435. Relying on the Third Circuit's rationale in Edmundson, the Supreme Court of Alabama soundly rejected the competence of a lay panel to scrutinize a case for constitutional errors. Id. The case at bar presents an identical problem. In order to decide the plaintiff Burch's and plaintiff Barron's section 1983 claims of unconstitutional use of excessive force, any adjudicatory body must determine whether Deputy Ingle's actions caused "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." See 42 U.S.C. §1983. Furthermore, in analyzing both Deputy Ingle's section 1983 liability and his claim of the defense of qualified immunity, a reviewing body must analyze both whether the facts "establish a constitutional violation" and whether the constitutional right was "clearly

established." <u>Gray ex rel. Alexander v. Bostic</u>, - - - F.3d - - -, 2006 WL 2244262 (11th Cir. Aug. 7, 2006). The resolution of each issue involves extensive legal research and significant analysis of applicable statutory, constitutional, and common law.

Under <u>Smith</u>, both Alabama and federal law undoubtedly require that administrative findings pertaining to constitutional law must be reviewed by a competent court, regardless of the general rules regarding issue preclusion. <u>Smith</u>, 683 So.2d 435. Furthermore, the constitutional issues presented in this case are far more extensive and complex than those presented in <u>Smith</u>. Therefore, if the <u>Smith</u> court soundly rejected issue preclusion of an unreviewed agency decision applying constitutional law, then facts in this case obviously necessitate independent judicial review of Mr. Burch's and Ms. Barron's constitutional claims. Because Alabama would not apply issue preclusion to this case, a federal court may independently review the plaintiffs' section 1983 claims irrespective of the Walker County Civil Service Board's factual findings.

### C. The Plaintiffs were not required to appeal the Board's findings to the Walker County Circuit Court before filing a civil rights action in federal court.

Defendant Ingle will likely attempt to circumvent the Supreme Court of Alabama's holding in <u>Smith</u> by pointing out the court's holding that Smith should have appealed his case to the Circuit Court before filing his section 1983 action. <u>See</u> <u>Smith</u>, 683 So.2d at 435. However, the <u>Smith</u> holding is easily distinguishable from the case at bar.

The Supreme Court of Alabama has distinguished between local personnel boards from state administrative agencies, concluding that local personnel boards with limited powers do not present litigants with a full and fair opportunity to pursue federal claims. <u>Ex parte Boyette</u>, 728 So.2d 644, 649 (Ala. 1998). In <u>Boyette</u>, the court declined to follow <u>Smith</u>, finding that the

plaintiff was not required to appeal the findings of the Jefferson County Personnel Board to the Jefferson County Circuit Court before filing a separate ADEA action in the circuit court. Id. The Board in Boyette derived its authority from § 22 of Act No. 248, 1945 Ala. Acts p. 376, as amended by Act No. 679, 1977 Ala. Acts p. 1176. Id. In contrast, the administrative board's authority in Smith was governed by statute. Id. (citing Ala. Code § 41-22-20(k)(1) (1975). In the instant case, the Walker County Board of Civil Service is governed by local act. See 1994 Acts Ala. 200 § 14. As such, the Walker County Board's authority is almost identical to the Jefferson County Personnel Board's authority in Boyette. As a result, the Walker County Board's authority is more limited than the broad administrative powers addressed in Smith. Therefore, under the holding in Boyette, Plaintiffs Burch and Barron were not required to appeal the Board's findings to the Walker County Circuit Court before filing this action seeking redress for constitutional violations in federal court.

For the foregoing reasons, issue preclusion is inapplicable to this case. Because issue preclusion is not available to Defendant Ingle as a defense to the Plaintiffs' claims, this court may independently view the evidence to determine—in a light most favorable to the non-movant Plaintiffs—whether Defendant Ingle unconstitutionally used excessive force in entering the Plaintiffs' home and subduing and subsequently arresting Plaintiff Burch. Defendant Ingle's Motion for Summary Judgment therefore should be Denied.

### III. **Defendant Ingle is not entitled to use either issue or claim preclusion to establish qualified immunity as a defense to the Plaintiffs' claims of unconstitutional use of excessive force.**

Because the factual findings of the Board have no preclusive effect in this proceeding, this Court must independently view the facts in the light most favorable to the Plaintiffs, the non-

movant, in order to determine if excessive force was used in violation of section 1983. Given the obvious dispute in the parties' testimony, genuine issues of material fact exist as to whether Defendant Ingle's conduct violated clearly established law. Because genuine issues of fact exist as to this point, Defendant is not entitled to summary judgment on the defense of qualified immunity. As such, summary judgment for Defendant Ingle is improper and his motion should be Denied.

Defendant Ingle has asserted qualified immunity in the case at bar. The Fourth Amendment generally protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Specifically, the Fourth Amendment protects a person's right not to be subject to excessive force during an investigatory stop or seizure. Benton v. Hopkins, 2006 WL 2052858 *2 (11th Cir. 2006). Before a court can rule on this matter, the injured party must show the official's violation of a constitutional right, when the facts alleged are viewed in a light most favorable to the injured party. See Sacier v. Katz, 533 U.S. 194, 201 (2001). Once it is determined that a constitutional right was violated, the Court examines whether this right was clearly established such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. at 202. This is a standard of objective reasonableness to facts that are materially similar to the ones in the case before the Court. See Yelverton v. Vargo, 386 F.Supp.2d 1224, 1228 (M.D. Ala. 2005), Vinyard v. Wilson, 311 F.3d 1340, 1351-52. The court balances several factors in evaluating whether or not the force was excessive from the totality of the circumstances. Id. These include: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. See also Griffin v. City of Clanton, 932 F.Supp. 1359, 1368 (M.D. Ala. 1996).

**IV.    Defendant Ingle is not entitled to use either issue or claim preclusion to establish**

In the case at bar, Mr. Burch did not pose any threat to the officer or to anyone else once he was handcuffed and buckled into the car. (See Transcript of Walker County Civil Service Board Hearing dated October 26, 2004, at page 60). There was no reason for Defendant Ingle to continually slam on the brakes, thereby injuring Mr. Burch. (See Transcript of Walker County Civil Service Board Hearing dated October 26, 2004, at pages 122-23). Defendant Ingle also had no justification for stopping the car and continuing to physically abuse Mr. Burch on the way to the jail. (See Transcript of Walker County Civil Service Board Hearing dated October 26, 2004, at pages 53-62). Not only did he spray him continuously with pepper spray but also he physically abused him. (See Transcript of Walker County Civil Service Board Hearing dated October 26, 2004, at pages 53-62). This testimony is disputed by Defendant Ingle, raising genuine issues of material fact related to the excessive force claim and thereby making summary judgment inappropriate.

The courts have held it reasonable to use an amount pepper spray proportionate to the threat in an attempt to complete an arrest, including the use of it on a person who is resisting arrest. See Benton v. Hopkins, 2006 WL 2052858 *2 (11th Cir. 2006), Garrett v. Athens-Clarke County, 378 F.3d 1274, 1280 (11th Cir. 2004), McCormick v. Fort Lauderdale, 333 F.3d 1234, 1245 (11th Cir. 2003), Henderson v. Inabinett, 2006 WL 2547435 *8 (M.D. Ala. 2006), Yelverton, 386 F.Supp.2d at 1229, Griffin, 932 F.Supp. at 1369. However, the caselaw clearly states that it is unreasonable to use pepper spray when the individual is already handcuffed and subdued, as was done in the case at bar. See Vinyard v. Wilson, 311 F.3d 1340, 1348 (11th Cir. 2002). The Vinyard case is factually similar to the case at bar in that the already subdued and handcuffed individual was subjected to further abusive treatment in the forms of both pepper

spray and physical abuse when the officer had stopped the car during a short ride. Id. at 1347. The Vinyard court noted that there was no resistance or attempt to flee once the initial arrest was made, as is true with Mr. Burch. Id. In addition, the Vinyard court found it significant that the arrest stemmed from a misdemeanor, which is another striking resemblance to the case at bar. Id. When the Vinyard court weighed all of these factors, it found in favor of the injured party with regard to the excessive force during the ride to the jail, as should be done found for Mr. Burch. Id. at 1348. Because the Vinyard case is materially similar to the case at bar and because there are genuine issues of material fact with regard to the specific facts surrounding the excessive force, summary judgment for Defendant Ingle is due to be denied.

/s/Anthony Piazza
Anthony Piazza, ASB-6593-A47A
Attorney for the Plaintiffs
P. O. Box 550217
Birmingham, AL   35255-0217
(205) 933-1155

**CERTIFICATION OF SERVICE**

This is to certify that I have this day, the 27th September 2006, electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide notice to the following CM/ECF participants:

Gary L. Willford, Jr., Esquire
Daryl L. Masters, Esquire
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
P. O. Box 240909
Montgomery, AL   36116

/s/ Anthony Piazza
Anthony Piazza