IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TOMMY D. BARRON, et al., ] | |
| ] | |
| Plaintiffs, ] | |
| ] | |
| v. ] | CV-06-BE-331-S |
| ] | |
| WALKER COUNTY, ALABAMA, ] | |
| et al., ] | |
| ] | |
| Defendants. ] | |

## MEMORANDUM OPINION

This case comes before the court on "Defendant's Motion for Summary Judgment" (doc. 75) and "Plaintiffs' Motion for Summary Judgment" (doc. 79). The parties have fully briefed both motions. Plaintiffs assert a claim under § 1983 that Defendant Deputy Ingle violated their Fourth Amendment rights by using excessive force against them in the course of arresting and detaining Plaintiff Tommy Barron (now known as Taz Burch).[1] For the reasons stated below, Defendant's motion (doc. 75) is due to be GRANTED IN PART and DENIED IN PART; Plaintiffs' motion (doc. 79) is due to be DENIED. A separate order to that effect will be entered simultaneously.

## BACKGROUND

Plaintiff Burch injured his right thumb while working on the water heater at his home on February 15, 2004. Emergency room x-rays revealed an acute fracture of his right thumb. Emergency room doctors placed his hand in a medical brace and gave him Darvocet for pain.

---

[1] For simplicity, the court adopts the parties' practice of referring to him as Burch.

1

Later in the evening of February 15, 2004, Burch and his wife Patsy Barron (now known as Patsy Wilkerson)[2] had several friends over.  Burch consumed several beers.  After their friends left, Burch took his Darvocet and asked Wilkerson to stay up with him to watch a movie.  She refused and went to bed instead.

During the early morning hours of February 16, 2004, Burch called 911 to complain about his wife.  Wilkerson was also on the line during the 911 call.  The dispatcher told them he was sending an officer to their house, because they were abusing the 911 system.

Defendant Deputy Ingle arrived at the Plaintiffs' home at approximately 1:51 a.m.  Wilkerson answered the door and told Deputy Ingle that everything was ok and that Burch was asleep.  Deputy Ingle told Wilkerson that he needed to speak with Burch, because Burch was the one who placed the 911 call.  Wilkerson retreated into the house to wake Burch, and Deputy Ingle followed her inside.

Once inside, Deputy Ingle called for Burch to come out of the bedroom and talk to him.  Burch came down the hallway wearing only underwear and a t-shirt.  Plaintiffs assert that Deputy Ingle was shouting at Burch to get out of bed and come into the living room.  Deputy Ingle asserts that Burch came out of the bedroom without being called and that he demanded Deputy Ingle leave, poked Deputy Ingle in the chest, and drew back as if to throw a punch.  Plaintiffs deny that Burch poked or attempted to punch Deputy Ingle.  Both parties admit Deputy Ingle sprayed Burch with pepper spray and told Burch he was under arrest for disorderly conduct.

Deputy Ingle handcuffed Burch, after Wilkerson warned him to be careful because Burch

---

[2] For simplicity, the court adopts the Defendant's practice of referring to her as Wilkerson.

had hurt his hand the day before. Plaintiffs assert that Deputy Ingle then pushed Burch outside and down the porch steps without first getting him dressed. Plaintiffs allege that only upon Wilkerson's pleading did Deputy Ingle bring him back in to allow Wilkerson to clothe Burch. Wilkerson dressed Burch, and Deputy Ingle placed him in the backseat of his patrol car. Plaintiffs allege that Deputy Ingle continued to spray Burch with pepper spray until they reached the patrol car. Deputy Ingle left the Plaintiffs' home with Burch in the patrol car at approximately 2:06 a.m.

Deputy Ingle stated that on the way to the jail, Burch was beating his head against the partition of the patrol car. Burch asserts that Deputy Ingle failed to buckle Burch into the car and was driving erratically ("brake checking"), which caused Burch to inadvertently slam his head into the patrol car partition. Deputy Ingle asserts that he did buckle Burch in and that Burch continued to bang his own head against the patrol car partition. Burch asserts that Deputy Ingle was so angry about Burch hitting his head on the partition that he stopped the car, sprayed Burch again with pepper spray, and tried to force Burch out of the car. Burch further asserts that in attempting to pull him out of the car, Deputy Ingle grabbed his right middle finger and forced it backwards, breaking his finger.

At approximately 2:21 a.m., Deputy Ingle arrived at the jail with Burch. Deputy Ingle asserts that Burch would not provide booking information and refused to change into a jail uniform. When Sergeant Kendrick removed Burch's clothing and provided him with a uniform, Burch's medical brace snagged and came off of his right hand. Once placed in his cell, officers assert that Burch beat on the door and walls with his hands, head, and feet. Barron asserts that once in his cell, the officers threw cold water on him, removed his clothing, and knocked him

around his cell.

Burch completed a medical screening form at 10:37 a.m. The form indicated that Burch had a blue swollen finger that appeared to be broken. At approximately 5:00 p.m., Burch saw Dr. Clifford Vance, who noted the swelling in Burch's finger and documented that Burch had "zero recollection of how this happened." Burch was released on bond before an x-ray could be performed.

Upon his release, Wilkerson took Burch to the hospital. Medical records from this visit indicate that Burch's middle finger was not broken, but that he had contusions (bruises) on his knees and right hand. The fracture in his right middle finger was not diagnosed until February 23, 2004, when Burch again visited the hospital. At that time, the doctor noted Burch's already broken right thumb, placed a splint on Burch's middle finger, gave him medicine for pain, and instructed him to follow up with an orthopedic doctor. On March 5, 2004, Burch visited Brookwood Hospital; at that time, the doctor noted the problems in the late treatment of the fracture. Because he had severe nerve damage and reduced function of his right hand due to a previous arm injury, and because he would not be able to attend regular physical therapy, Burch requested that the right middle finger be amputated.

Burch also has a history of mental health conditions, including bipolar disorder and schizophrenia, but he had stopped taking his medication for these conditions sometime in January of 2004. Burch has also undergone treatment for alcoholism and suicidal thoughts.

On March 7, 2004, Burch was found not guilty of disorderly conduct but was found guilty on the charge of resisting arrest. Burch appealed his conviction, arguing that the arrest for disorderly conduct did not occur in a public place, an underlying aspect of the disorderly conduct

charge. Accordingly, Burch argued, he could not be found guilty of resisting arrest, because any resistance on his part was not pursuant to a lawful arrest. On April 14, 2008, the resisting arrest charge against Burch was dismissed.

Burch filed a complaint with the Walker County Civil Service Board on March 12, 2004, alleging that he was subjected to excessive force by Deputy Ingle and that his wife was verbally harassed by Deputy Ingle. The Civil Service Board held four hearings, at which Burch appeared, was represented by counsel, and had the opportunity to call witnesses and present documents. The Board found that Deputy Ingle had known Burch for ten to twelve years prior to Burch's arrest on February 16, 2004, and that Deputy Ingle had arrested Burch on previous occasions. The Board concluded that Deputy Ingle had acted properly under the circumstances, had not violated Burch's rights, and had not used excessive force in arresting Burch.

Plaintiffs filed suit in this court on February 16, 2006, alleging invasion of privacy, excessive force, assault and battery, false arrest and imprisonment, denial of medical attention, malicious prosecution, negligence, inadequate supervision, negligent hiring, and outrage. This court has dismissed all Defendants and claims except the Plaintiffs' § 1983 claim against Defendant Deputy Ingle alleging excessive use of force in violation of the Plaintiffs' Fourth Amendment rights. Defendant (doc. 76) and Plaintiffs (doc. 80) both moved for summary judgment, and the parties have fully brief both motions.

### STANDARD OF REVIEW

Summary judgment is an integral part of the Federal Rules of Civil Procedure. Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a

district court reviews a motion for summary judgment must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).  The moving party can meet this burden by offering evidence showing no dispute of material fact or by showing that the non-moving party's evidence fails to prove an essential element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  Rule 56, however, does not require "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.*

Once the moving party meets its burden of showing the district court that no genuine issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).   In responding to a motion for summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita*, 475 U.S. at 586.  The non-

moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a *genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis added); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28 U.S.C. app. ("The very mission of summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."). The moving party need not present evidence in a form admissible at trial; "however, he may not merely rest on [the] pleadings." *Celotex*, 477 U.S. at 324. If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50 (citations omitted).

In reviewing the evidence submitted, the court must "view the evidence presented through the prism of the substantive evidentiary burden," to determine whether the nonmoving party presented sufficient evidence on which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Commc'n, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). The court must refrain from weighing the evidence and making credibility determinations, because these decisions fall to the province of the jury. *See Anderson*, 477 U.S. at 255; *Stewart v. Booker T. Washington Ins. Co.*, 232 F.3d 844, 848 (11th Cir. 2000); *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d. 1274, 1282 (11th Cir. 1999). Furthermore, all evidence and inferences drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *Graham*, 193 F.3d at 1282. The non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Id.* Instead, the evidence of the non-moving party "is to be believed and all justifiable inferences are to be drawn in [its] favor." *Anderson*, 477 U.S. at 255. After both parties have addressed the motion for summary

judgment, the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56.

The applicable Rule 56 standard is not affected when both parties move for summary judgment. *See Gerling Global Reinsurance Corp. of Am. v. Gallagher*, 267 F.3d 1228, 1233 (11th Cir. 2001). The Eleventh Circuit has explainted that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (citation omitted). Furthermore, "'the filing of cross motions for summary judgment does not necessarily indicate that there is no dispute as to a material fact, or have the effect of submitting the cause to a plenary determination on the merits.'" *Godard v. Ala. Pilot, Inc.*, 485 F. Supp. 2d 1284, 1291 (S.D. Ala. 2007) (quoting *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983)). Nevertheless, cross motions for summary judgment "may be probative of the absence of any factual dispute where they reflect general agreement by the parties as to the dispositive legal theories and material facts." *Godard*, 485 F. Supp. 2d at 1291 (citing *Oakley*, 744 F.2d at 1555-56).

**DISCUSSION**

In his motion for summary judgment, Defendant Deputy Ingle argues that he is entitled to qualified immunity.[3] Qualified immunity protects government officials performing discretionary

---

[3] Defendant Deputy Ingle also reasserts his argument that the county agency's administrative findings have preclusive effect on the Plaintiffs' claims. Based upon binding Eleventh Circuit precedent, this court has already determined that "unreviewed state agency decisions will not receive claim preclusive effect in a section 1983 action regardless of whether the state from which the judgment arose would bar the section 1983 claim." *Gjellum v. City of Birmingham*, 829 F.2d 1056, 1070 (11th Cir. 1987); (doc. 43). Defendant concedes that *Gjellum* constitutes binding precedent but raises the argument to preserve his right to argue on appeal that

functions from suit in their individual capacities unless the official violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citation omitted). "Because qualified immunity is a defense not only from liability, but also from suit, it is important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible." *Id*. (citing *GJR Invs., Inc., v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir. 1998)).

To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). Government officials act within the scope of their discretionary authority if "the actions were (1) 'undertaken pursuant to the performance of [their] duties' and (2) 'within the scope of [their] authority.'" *Lenz v. Winburn*, 51 F.3d 1540, 1545 (11th Cir. 1995) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1998)). Deputy Ingle asserts that he was dispatched to the Plaintiffs' home by his superiors after the 911 operators received a call from the Plaintiffs. Plaintiffs concede that Deputy Ingle was engaged in discretionary functions in responding to the 911 call.

"Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*,

---

*Gjellum* was wrongly decided.

284 F.3d 1188, 1194 (11th Cir. 2002).   The Supreme Court has articulated a two-part test to determine whether qualified immunity is appropriate.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  First, the court must ask this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right."  *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194,  201 (2001)).  Second, "[i]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established."  *Id.* (citing *Saucier*, 533 U.S. at 201).

Plaintiffs allege that Deputy Ingle violated their Fourth Amendment right to be free from the use of excessive force.  The Fourth Amendment provides the right to be "free from excessive force in the course of an investigatory stop or other 'seizure' of the person."  *Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004).  To establish an excessive force claim, Plaintiffs must first show they were "seized" within the meaning of the Fourth Amendment.  *Beshers v. Harrison*, 495 F.3d 1260, 1265 (11th Cir. 2007).  A Fourth Amendment seizure occurs when "there is a governmental termination of freedom of movement *through means intentionally applied*."  *Brower v. County of Inyo*, 489 U.S. 593, 597 (1989) (emphasis in original).

Here, Deputy Ingle intentionally handcuffed, arrested, and detained Plaintiff Burch; thus, Plaintiff Burch was seized within the meaning of the Fourth Amendment. However, Deputy Ingle never restricted Plaintiff Wilkerson's freedom of movement or used any force in his interactions with her.  The court, therefore, finds that Wilkerson has not alleged facts to show that the Defendant's conduct violated *her* constitutional right to be free from excessive force.

Accordingly, the court determines that Defendant Deputy Ingle is entitled to qualified immunity as to Wilkerson's claim against him and that summary judgment is appropriate as to her claim.

Once the plaintiff establishes that a seizure occurred, the next inquiry is "whether the force used to effectuate the seizure was reasonable." *Beshers*, 495 F.3d at 1266. "The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation." *Kesinger*, 381 F.3d at 1248 (citing *Graham v. Connor*, 490 U.S. 386, 397 (1989)). "[T]o determine whether the amount of force used by a police officer was proper, a court must ask whether a reasonable officer would believe that this level of force is necessary in the situation at hand." *Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (internal quotation marks omitted).

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham*, 490 U.S. at 396. Thus, determining "whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). The Supreme Court has concluded that this "careful balancing" requires the court to consider such factors as the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*; *see also Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986) (holding that in determining if force was reasonable courts

must examine the need for the application of force, the proportionality of the need and amount of force used, and the extent of the injury inflicted).

In this case, the crime at issue was allegedly disorderly conduct. The Plaintiffs allege that Burch was asleep when Deputy Ingle arrived and that Wilkerson told Deputy Ingle that everything was okay and that he could leave. Plaintiffs also allege that Burch came out of the bedroom wearing only underclothes, that he was unarmed, and that he did nothing to provoke Deputy Ingle's use of pepper spray to handcuff him. Deputy Ingle asserts that when he arrived, Burch was yelling obscenities from the bedroom and that, when Burch came out of the bedroom, he was belligerent and intoxicated. Plaintiffs and Defendant agree that Deputy Ingle used pepper spray on Burch prior to handcuffing him; Deputy Ingle asserts that his use of pepper spray was reasonable in response to Burch's belligerent behavior, but the parties dispute whether his behavior in fact was belligerent. Furthermore, Plaintiffs and Defendant tell different stories regarding what took place in the patrol car on the way to the jail and once they arrived at the jail. These factual disputes go to the heart of the question of whether Deputy Ingle used excessive force against Plaintiff Burch.

Defendant urges the court to find that any issues of material fact are not genuine in light of *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007). In *Scott*, the Supreme Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." 127 S. Ct. 1769, 1776 (2007). Unlike the court in *Scott*, this court lacks the benefit of a video recording of the arrest of Burch to assist in determining which alleged facts can be considered "blatantly contradicted" by the record.

12

Defendant argues that Plaintiff Burch's description about the trip to the County Jail cannot possibly be true, because the Call Activity Log clearly shows the roughly 16 mile trip took 15 minutes. Defendant asserts the trip time indicates Plaintiff Burch's story cannot be plausible, because the trip would have taken longer if Deputy Ingle had stopped to batter Burch. The court need not decide whether *Scott* precludes consideration of the incidents in the patrol car; even considering the case through the *Scott* lens, factual disputes regarding the Defendant's *other* alleged uses of force are not "blatantly contradicted by the record" and raise genuine issues of material fact that must be balanced in determining whether any of Deputy Ingle's alleged uses of force were reasonable.

The court finds that genuine issues of material fact remain as to the events and circumstances surrounding Burch's arrest and detainment. The court cannot at this stage determine whether any of the Plaintiff's allegations as to Defendant Deputy Ingle's conduct amounts to an excessive use of force. Many genuine issues of material fact remain as to the question of whether Deputy Ingle's use of force was reasonable under the circumstances. These questions involve credibility determinations best left to the jury. The court, therefore, cannot determine whether Plaintiff Burch has established a constitutional violation; nor can the court, then, determine whether qualified immunity is proper. Accordingly, summary judgment for either party would be improper.

## CONCLUSION

For the reasons stated above, the court finds that Defendant Deputy Ingle is entitled to qualified immunity and summary judgment as to Wilkerson's claim of excessive force against him. Defendant's motion for summary judgment as Wilkerson's claim will be GRANTED, and

Wilkerson's motion for summary judgment will be DENIED and her claim DISMISSED.

The court determines that genuine issues of material fact remain as to the events and circumstances surrounding Burch's arrest and detainment. Summary judgment in favor of either party, therefore, would be improper. Accordingly, Defendant's motion for summary judgment as to Burch's claim will be DENIED, and Plaintiffs' motion for summary judgment will be DENIED.

DATED this 8th day of October, 2008.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE